UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FILED

AUG - 7 2012

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

THE INCOME TAX SCHOOL, INC.,

Plaintiff,

v.

CARLOS C. LOPEZ, *et al.*,

Defendants.

Civil Action No. 3:12–CV–334

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants' Motion to Dismiss Case Due to Lack

of Personal Jurisdiction and Insufficient Service of Process ("Motion"). (ECF No. 5.) The

underlying case is a copyright infringement action filed by Plaintiff The Income Tax School ("ITS")

against Defendants Carlos C. Lopez ("Mr. Lopez" or "Carlos"), Kristeena S. Lopez ("Mrs. Lopez"

or "Kristeena"), Latino Tax Professionals Association, LLC ("LTPA"), and Lopez Tax Service, Inc.

("LTS"). Defendants jointly move this Court to dismiss this action for lack of personal jurisdiction,

and for insufficient service of process. On July 13, 2012, the Court heard arguments on the Motion

to Dismiss and took the matter under advisement. For the reasons stated below, the Motion is

GRANTED IN PART and DENIED IN PART, such that Defendants Mr. Lopez, Mrs. Lopez, and

LTS are DISMISSED without prejudice. In the interest of judicial economy and efficiency, however,

the Court, on its own initiative, declines to entertain the action against LTPA.

1

## I.  BACKGROUND[1]

Plaintiff ITS is an educational services and publishing company incorporated in Virginia, with its principal place of business in Glen Allen, Virginia. (Compl. ¶ 1, ECF No. 1.) ITS authors and publishes materials for training income tax professionals. (*Id.* ¶ 8.) ITS is a spin-off company of Peoples Income Tax, Inc. ("Peoples") and is assigned all the rights to Peoples' training publications business.[2] (Pl.'s Mem. Opp'n Mot. Dismiss, Decl. Charles E. McCabe ("McCabe Decl.") ¶ 3, ECF No. 11-1.) Peoples and ITS have common ownership. (*Id.*)

Defendants LTS and LTPA compete with ITS. (Compl. ¶ 9.) LTS provides tax preparation services and publishes continuing tax education materials. (Defs.' Mem. of Points and Authorities in Supp. Mot. to Dismiss Due to Lack of Personal Jurisdiction ("Defs.' Mem.") 4, 8, ECF No. 5-1.) LTS is incorporated and headquartered in California. (*Id.*) LTPA is a limited liability company organized under the laws of, and headquartered in California. (*Id.*) Its members consist of Latino tax professionals, and it contends that it has no members in Virginia. (*Id.*) LTPA markets and sells tax preparer educational and examination preparation materials to its members and others nationwide.[3] (Defs.' Mem. 8; Defs.' Mem. Decl. of Carlos C. Lopez ("Carlos Decl.") ¶ 13, ECF No. 5-2.)

Defendants Mr. Lopez and Mrs. Lopez (collectively, "the Lopez Defendants") are citizens and residents of California. (Carlos Decl. ¶ 3; Defs.' Mem. Decl. of Kristeena S. Lopez ("Kristeena Decl.") ¶ 3, ECF No. 5-3.) The Lopez Defendants are owners and officers of LTS and LTPA. (Carlos Decl. ¶¶ 6-7; Kristeena Decl. ¶¶ 6-7.) Specifically, Mr. Lopez is the president, a director, and

---

[1] The facts recited herein are based on the Court's review of the pleadings, legal memoranda, and supporting documentation, with all reasonable inferences drawn in favor of Plaintiff, as required. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

[2] The record does not indicate what year the spin-off occurred.

[3] The materials sold by LTPA include materials it created and those prepared by LTS. (Defs.' Mem. 8, Carlos Decl. ¶ 13.)

a shareholder of LTS, and is also a managing member of LTPA. (Carlos Decl. ¶¶ 6-7.) Mrs. Lopez is

an officer of LTS, and a member of LTPA. (Kristeena Decl. ¶¶ 6-7.)

In 2000, at a New Jersey tradeshow, LTS won an operator's kit training material from

Peoples. (McCabe Decl. Ex. A, Sept. 7, 2000.) Subsequently, from 2000 continuing until 2008, LTS

purchased other training materials from Peoples with orders and payments submitted to Virginia.

(Pl.'s Mem. Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") 1, ECF No. 11; Compl. ¶¶ 9, 12.)[4] In 2007,

LTS entered licensing agreement with Peoples, and in 2008, LTS renewed the agreement. Under the

license agreements, Peoples granted LTS a "one year, renewable non-exclusive, nontransferable,

non-assignable license" to use certain materials published by Peoples to conduct tax preparation

training programs at one physical location for a period of one year. (McCabe Decl. Exs. F & G ¶ 1;

Compl. ¶ 12.) Both license agreements were signed by Mrs. Lopez on LTS's behalf. The agreements

each contained a clause selecting Virginia courts as the choice forum for any action or proceeding

arising out of, or relating to, the agreements.[5] Upon the expiration of the 2008 agreement, LTS did

not renew the license agreement.

On April 10, 2008, Mrs. Lopez sent an email to an employee of ITS located in Richmond,

Virginia. (*See* McCabe Decl. Ex. H.) In the email, Mrs. Lopez inquired about ITS's new courses,

pricing and available discounts, and whether LTS would be able to resell the courses. The ITS

---

[4] ITS submitted sale invoices dating from September 7, 2000, to June 30, 2008, to substantiate the purchases. (*See* McCabe Decl. Ex. A.) The sale invoices indicate that Peoples sold several training materials to LTS and shipped the materials to LTS's California address.

[5] Specifically, the forum clause in the 2008 license agreement, in relevant part, provides:

> The parties to this agreement hereby submit to the jurisdiction of the Federal and state courts located in Richmond, Virginia, in any action or proceeding arising out of, or relating to, this Agreement, and the parties waive all objections based on forum non conveniens with respect to such courts. The parties agree that all claims in respect to such action or proceeding may be heard and determined only in such courts and they agree not to commence any legal or equitable proceeding in any other court.

(McCabe Decl. Ex. G ¶ 7; *see* McCabe Decl. Ex. F ¶ 7 (identical provision).)

employee responded with information about the new courses, and pricing and available discounts. The response email does not contain information about LTS's ability to resell the courses.

In 2010, on LTPA's behalf, Mr. Lopez attended a tradeshow in Orlando, Florida.[6] At this tradeshow, five Virginia entities solicited LTPA for training materials. Following the tradeshow, the Virginia entities placed orders by phone to LTPA and LTPA shipped training materials to the Virginia entities at their Virginia addresses. (Defs.' Mem. 5; Defs.' Reply Mem. 8.) LTPA earned a total of approximately $1,000, which is less than .5 percent of its nationwide earnings from such sales which total $246,000. (Carlos Decl. ¶ 20.) On LTPA's website, it lists several entities, including the Virginia entities, as "training sites." Also, LTPA offers training materials for sale on its website. Further, in 2010, LTPA allegedly solicited business from MRS Tax of Woodbridge, Virginia, and in 2011, LTPA mailed samples of training materials to MRS at an address in Virginia. (Pl.'s Opp'n 12.) In 2011, LTPA sent an email campaign to its promotional nationwide email distribution list advertising the training sites, and soliciting business from other training sites. (Comp. ¶ 19; McCabe Decl. ¶ 10.)[7]

On May 2, 2012, ITS filed a Complaint in this Court alleging that Defendants infringed ITS copyright by creating and distributing unauthorized copies and derivative works of ITS's Materials.[8]

---

[6] The Court notes that there is a discrepancy as to whether the referenced tradeshow occurred in September 2011, in National Harbor, Maryland,. (*Compare* Defs.' Mem. 5, *and* Carlos Decl. ¶ 20, *with* Carlos Reply Decl. ¶ 6.) This discrepancy is of no relevant consequence to the Court's analysis on personal jurisdiction because the relevant conduct happened outside of Virginia. Hence, for the sake of consistency, the Court assumes the sale occurred in 2010 at a tradeshow in Orlando, Florida.

[7] The Complaint indicates that the date of this email is April 4, 2012, (*see* Compl. ¶ 19), whereas, McCabe's declaration indicates that the email was sent in 2011, (*see* McCabe Decl. ¶ 10). This discrepancy, however, is not relevant to the disposition of the Motion.

[8] In its Complaint, ITS lists the following materials which Defendants allegedly infringed: (1) Comprehensive Income Tax Course – 2008 (Reg. No. TX 7-418-016); (2) Comprehensive Income Tax Course – 2009 (Reg. No. TX 7-418-027); (3) Comprehensive Income Tax Course – 2010 (Reg. No. TX 7-418-038); (4) Comprehensive Income Tax Course – 2011 (Reg. No. TX 7-418-035); (5) California Comprehensive 2008 (Reg. No. TX 7-418-020); (6) California Comprehensive 2009 (Reg. No. TX 7-418-023); (7) California Comprehensive 2010 (Reg. No. TX 7-418-042); (8) California

The Complaint also alleges a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, on the basis that the infringed works are registered with the United States Copyright Office.

On May 23, 2012, in the United States District Court, Northern District of California, San Francisco Division, ("Northern District of California"), Defendants filed a declaratory judgment action for non-infringement captioned: *Lopez Tax Service, Inc., Carlos C. Lopez, Kristeena S. Lopez and Latino Tax Professionals Association, Inc., Plaintiffs, v. The Income Tax School, Inc., Defendants*, Case No. 12-CV-2654.[9] In the declaratory judgment action, Defendants move the Northern District of California to declare that Defendants did not copy or create derivatives of ITS's copyrighted materials, nor did they distribute any unauthorized copies. (Defs.' Req. for Judicial Notice in Supp. Defs.' Mot. Dismiss Ex. 6, ECF No. 5-4.)

On June 7, 2012, Defendants filed in this Court the pending Motion to Dismiss for lack of personal jurisdiction and insufficient service of process, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5).

---

Comprehensive 2011 (Reg. No. TX 7-418-032); (9) Comprehensive New York State Supplement (Reg. No. TX 7-459-640); (10) State Returns Resident, Part-Year and Nonresident Seminar (Reg. No. TX 7-475-032); (11) State Returns Resident, Part-Year and Nonresidents (Reg. No. TX 7-459-430); (12) Oregon 80-Hour Basic Tax Course (Reg. No. TX 7-470-202); (13) Amended Returns Seminar (Reg. No. TX 7-460-816); (14) The Income Tax School Seminar Series – Nonresident Alien Returns – Form 1040 NR (Reg. No. TX 7-475-034); (15) Nonresident Alien Returns Seminar (Reg. No. 7-460-833); (16) The Income Tax School Seminar Series – Earned Income Credit (2011) (Reg. No. 7-460-832); (17) The Income Tax School Seminar Series – Earned Income Credit (2010) (Reg. No. TX 7-460-838); (18) Clergy Seminar (Reg. No. TX7-460-839); (19) The Income Tax School – Clergy Instructors Manual and the Income Tax School – Clergy Student Manual (Reg. No. TX 7-458-972); (20) Schedule C – Seminar (Reg. No. TX 7-475-024); (21) Retirement Plans Seminar (Reg. No. TX-475-028); and (22) Rental Property Seminar (Reg. No. 7-475-029). (Compl. ¶ 10.)

[9] Pursuant to Federal Rule of Evidence 201(d), the Court takes judicial notice of the complaint filed in the Northern District of California.

## II. PERSONAL JURISDICTION

### A. Legal Standard

Personal jurisdiction is the power of a court "to bring a person into its adjudicative process." *Noble Sec., Inc. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 525 (E.D. Va. 2009). Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant can challenge the court's personal jurisdiction over the particular defendant. Such a challenge raises a question of fact for the judge, to be decided by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). The plaintiff bears the burden of proving the court's jurisdiction over each defendant. *Id.*

A reviewing court may decide the jurisdictional question on the basis of a separate evidentiary hearing, or evidence received at trial, or "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 426 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Where the issue is to be decided on the motion papers and attached memoranda, the plaintiff need only make a *prima facie* case of personal jurisdiction. *New Wellington Fin. Corp.*, 416 F.3d at 294. The court must thereon "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation omitted).

### B. Discussion

This Court has federal question subject-matter jurisdiction over this copyright infringement action, pursuant to 28 U.S.C. §§ 1331 and 1338. Nonetheless, the Court "must engage in a two-step analysis" for personal jurisdiction as it would in diversity cases. *AutoScribe Corp. v. Goldman & Steinberg, Inc.*, No. 94-1749, 1995 U.S. App. LEXIS 2848, at *1-3 (4th Cir. Feb. 3, 1994). Under the relevant inquiry, the Court must find that: "(1) the exercise of jurisdiction [is] authorized under the state's long-arm statute; and (2) the exercise of jurisdiction [ ] comport[s] with the due process

requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citations omitted). Virginia's long-arm statute "is intended to extend personal jurisdiction to the extent permissible under the due process clause," *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009), hence, "the statutory and constitutional inquiries coalesce into the question of whether [defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).

To satisfy the due process inquiry, non-resident defendants must have "certain 'minimum contacts' with [Virginia] such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The nature of the suit and the non-resident defendant's contacts with the forum state determine whether a court may assert general or specific jurisdiction. "When a defendant's contacts with the forum state are continuous and systematic, irrespective of whether the transaction in question had sufficient contacts with the state, a court may exercise *general* personal jurisdiction over the defendant." *Diamond Healthcare of Ohio, Inc.*, 229 F.3d at 450. "In the absence of continuous and systematic contacts, a court may still exercise *specific* personal jurisdiction when the contacts relate to the cause of action and create a substantial connection with the forum state." *Id.* Here, ITS contends that this Court has both specific and general personal jurisdiction over all Defendants. Accordingly, the Court will inquire whether general and specific jurisdiction exists as to all Defendants.

i.  General Jurisdiction

To implicate general jurisdiction, contacts with the non-resident individual or corporation must be "sufficiently extensive with the forum state" "before the burden of defending suit [in the forum state] may be imposed upon it without offending traditional notions of fair play and

7

substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (internal citations omitted). ITS conclusorily asserts that general personal jurisdiction over LTS and the Lopez Defendants is proper, but fails to show that the Lopez Defendants and LTS have continuous and systematic contacts with Virginia so as to implicate general jurisdiction over these Defendants. (*See* Pl.'s Opp'n 10-12.) Specifically, LTS's averments that it is not licensed to do business in Virginia; has no office, facility, property, employees or agents in Virginia; none of its officers, directors, or shareholders is a resident or citizen of Virginia; and has not derived any revenue from anyone in Virginia are also uncontroverted.[10] *See Ratliff*, 444 F.2d at 748 (finding a lack of general jurisdiction where the defendant employed five forum state residents, but had no office, warehouse, bank accounts, real or personal property in the forum state.) Although LTS made several purchases in the past from ITS, and an agent once attended a retreat in Virginia, "[p]urchases and related trips, standing alone are not a sufficient basis for a State's assertion of [general] jurisdiction." *Helicopteros*, 466 U.S. at 417. Therefore, this Court lacks general personal jurisdiction over LTS.

Similarly, it is uncontroverted that the Lopez Defendants are citizens and residents of California; have no property in Virginia; are not employed in Virginia; owe no taxes or any other money to Virginia; and do not have bank accounts or any assets in Virginia. Moreover, Mrs. Lopez has never been to Virginia, and her only contact with Virginia is an email she sent to an ITS employee located in Virginia. Mr. Lopez once visited Virginia in his official capacity but that single trip cannot be described as continuous and systematic, and thus, is insufficient to confer general jurisdiction on the Court. *See Int. 'l Shoe Co.*, 326 U.S. at 317 (The "casual presence of the corporate

---

[10] LTS notes that one individual, who became LTS's client while in California, subsequently moved to and now resides in Virginia. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Accordingly, LTS's client's subsequent fortuitous move to Virginia does not suffice to establish LTS's purposeful contact with Virginia.

agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to" general jurisdiction.).

Additionally, the Court lacks general jurisdiction over LTPA because LTPA's contacts with Virginia do not amount to continuous and systematic activities. As detailed below, LTPA sold materials[11] to five Virginia businesses during a 2010 tradeshow in Florida. It is unrefuted that these training sites are not owned, operated, or supervised by LTPA; and there is no partnership, franchisor/franchisee relationship between LTPA and the training sites. Further, LTPA disputes ITS's allegation that LTPA solicited business from MRS Tax of Woodbridge, Virginia, ("MRS"), and in 2011, LTPA mailed samples of training materials to MRS at an address in Virginia.[12] According to LTPA, an agent of MRS approached LTPA's exhibit at a tradeshow in Washington, D.C., and requested some sample training materials. (Carlos Reply Decl. ¶ 14.) Subsequently, LTPA sent the sample materials to MRS's business address in Virginia. LTPA asserts that MRS initiated the contact and never purchased any materials from LTPA. (*Id.*) The Court finds that even viewing the facts in the light more favorable to ITS, LTPA's alleged solicitation of MRS alone is insufficient for general jurisdiction. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) ("advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction"). LTPA has no office, facility, property, bank accounts, employees or agents in Virginia. On this bases, the Court concludes that it lacks general jurisdiction over LTPA. *See id.* at 1199 ("only when the continuous corporate operation [sic] within a state is thought so substantial and of such a

---

[11] ITS avers that the materials sold to the five Virginia entities include infringing materials underlying this action. (McCabe Decl. ¶ 9.) LTPA contends that the materials it sold are not among the materials for which ITS claims copyright infringement. (Carlos Reply Decl. ¶ 6.) Resolving this factual dispute in ITS's favor, *see Combs*, 886 F.2d at 676, the Court assumes for purposes of resolving this Motion that the materials sold to the Virginia entities infringe ITS's copyright.

[12] For purposes of specific personal jurisdiction over LTPA, the Court need not resolve this dispute because it finds that personal jurisdiction exists over LTPA on the basis of its other contacts with Virginia.

nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities may a court assert general jurisdiction over a corporate defendant." (quotation marks and citations omitted)).

Because the Court lacks general personal jurisdiction over all Defendants, an exercise of jurisdiction over Defendants, if appropriate, must be an exercise of specific personal jurisdiction.

ii.  Specific Jurisdiction

The Fourth Circuit has synthesized the due process requirements for specific jurisdiction in a three-part test which requires a reviewing court to consider: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citations omitted). For intentional tort cases, the "effects test" is used to determine whether the first prong of the three-part test is satisfied. Specifically, the purposeful availment prong is satisfied if the plaintiff can show that "the actions initiated by the defendant [are] 'purposefully directed' at the forum state, creating a 'substantial connection' with that state." *AutoScribe Corp.*, 1995 U.S. App. LEXIS 2848, at *14 (emphasis omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985)). Under the "effects test," the plaintiff "must establish that specific jurisdiction is proper by showing that '(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.'" *Consulting Eng'rs Corp.*, 561 F.3d at 280 (quoting *Carefirst of Md., Inc.*, 334 F.3d at 398 n.7). As copyright infringement is an intentional tort, *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 120 (4th Cir. 1981), the Court also examines the Defendants contacts under the effects test.

a. *Lopez Tax Services, Inc. (LTS)*

LTS's alleged contacts with Virginia boils down to the following: (1) from 2000 to 2008, LTS made multiple purchases from Peoples, with orders and payments submitted to Virginia; (2) in 2003, an LTS agent traveled to a Peoples' retreat in Virginia and purchased training materials;[13] (3) in 2007 and 2008, LTS executed license agreements with Peoples which contained forum-selection clauses indicating that disputes arising out of the agreements would be litigated in Virginia; and (4) in 2010, Mrs. Lopez, an LTS agent sent an email to an ITS employee located in Virginia requesting information about ITS's courses, pricing, and possible resale by LTS. These contacts fail to satisfy the purposeful availment and are not tethered to the fact that ITS's claims sound in copyright infringement.

"Courts frequently have distinguished between buyer and seller in applying long-arm statutes. Jurisdiction has more often been assumed over non-resident sellers than over non-resident buyers." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F. 2d 220, 232 (6th Cir. 1972) (citations omitted). This distinction exists as a "short-hand means of expressing the differences between passive and active involvement in a transaction." *Id.* at 233. However, "[t]o the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears." *Id.* Here, the record indicates that LTS was merely a passive, as opposed to active, purchaser. There is no evidence that there were discussions between LTS and ITS regarding the terms of the purchases, or that any such discussions or negotiations occurred within Virginia. *Cf. Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543

---

[13] LTS avers that the only time an agent of LTS ever came to Virginia was in 2003, when Mr. Lopez attended a National Association of Tax Business Owners Meeting, as opposed to a Peoples' retreat. At the meeting, he purchased *one* handbook on Mr. McCabe's experience in operating a tax business, as opposed to training materials.

F.Supp.2d 913, 920-25 (N.D. Ill. 2008) (defendant was an active purchaser, and personal jurisdiction was proper where the defendant engaged in communications over a considerable length of time, and on several occasions sent its employees to meet with the plaintiff in the forum state); *see also General Electric Co. v. Rose Int'l, Inc.*, 475 F. Supp. 602, 606 (W.D. Va. 1979) (where the defendant made initial contact with the plaintiff and following the defendant's request, the parties subsequently met in Virginia, the Court found that "[t]he sum total of [the] defendant's activities leading to the purchase of certain . . . assets and inventory [of the plaintiff] serves to negate its protestations of passivity."). On this basis, it is unreasonable to conclude that LTS could have foreseen that it could be haled into Virginia courts. As such, the Court finds that LTS did not avail itself of the privileges of conducting activities in Virginia.

ITS contends that the facts in *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285(4th Cir. 2009) where the Fourth Circuit found personal jurisdiction, are a "mirror image of the facts in this case." (Pl.'s Opp'n 8.) In *CFA Inst.*, the Fourth Circuit found that an Indian financial analysis institute (ICFAI) purposefully availed itself of Virginia laws because it purposefully transacted business with the plaintiff in Virginia, and the cause of action arose out of its Virginia-related business transactions. In 1984, ICFAI visited Virginia and approached CFA Institute regarding establishing a CFA program in India. 551 F.3d at 288. Subsequently, the parties entered a business relationship and established a program in India. ICFAI even changed its name to reflect this relationship and patterned its program after CFA Institute's program. In 1987, ICFAI representatives attended CFA Institute's board meeting as special guests of honor. In 1994, ICFAI's executive director directed a letter, and other correspondence, to the CFA Institute in Virginia requesting additional permission to use CFA Institute's intellectual property in India. In 1995, CFA Institute notified ICFAI that it was violating the business agreement; subsequently, the parties entered a settlement agreement to resolve the dispute. In 1997, CFA Institute suspected ICFAI was

12

in violation of the settlement agreement, and thereafter, sued ICFAI. The Fourth Circuit found that ICFAI and CFA Institute had an integrated relationship wherein they worked jointly on an activity to create or produce something. The Fourth Circuit concluded that ICFAI purposefully transacted business with CFA Institute in Virginia because it initiated contact with CFA Institute, "repeatedly reached into Virginia to transact business with the CFA Institute," and "corresponded and collaborated [that is, they worked jointly on an activity] with the CFA Institute for approximately thirteen years." *Id.* at 25.

Contrary to ITS's assertion, *CFA Inst.* is inapposite and easily distinguishable from this case for several reasons. First, there is no indication that LTS initiated or solicited the relationship with Peoples, or that the relationship begun in Virginia. Instead, the record indicates that LTS's relationship with Peoples began in 2000, at a tradeshow in New Jersey, where an agent of LTS won a training kit from Peoples. Thus, it appears that Peoples initiated the relationship by offering the training kit which LTS won at the New Jersey tradeshow. Also, the record points to only one email communication to ITS and does not demonstrate that LTS repeatedly reached into Virginia to transact business. Additionally, ITS failed to show the existence of an integrated relationship or joint enterprise between LTS and Peoples or that they worked jointly to create or produce something. Instead, the license agreements state that the training materials "may be inaccurate, incomplete, or contain defects" and are provided "'as-is' without warranty," (*see* McCabe Decl. Ex. F & G ¶ 6), indicating the absence of a collaboration or continuing relationship. Moreover, the license agreement in *CFA Inst.* was negotiated, whereas here, it appears that it was not.

This case, rather, is similar to *AutoScribe Corp.*, 1995 U.S. App. LEXIS 2848, which involved the application of a provision of Maryland's long-arm statute that is similar to the Virginia statute at issue in this case. There, a non-resident corporate defendant entered into a license software agreement with the plaintiff. The defendant (Goldman & Steinberg) executed the form licensing

13

agreement in New Jersey and returned the executed agreement and payment for the license to the plaintiff in Maryland. In addition, the defendant telephoned the plaintiff about a dozen times requesting technical support with the licensed software. After the plaintiff discovered that a second defendant (Intell-A-Check), who shared the same address and president as Goldman & Steinberg, was marketing the licensed software, the plaintiff, through its agents, contacted Goldman & Steinberg in an attempt to purchase the infringing software. Further, Intell-A-Check sent about 197 notices for collection of debts to Maryland residents on behalf of its clients. The Fourth Circuit found that there was "nothing compelling about the licensing agreement" because "the agreement was a one-page preprinted form that prompted no negotiations;" and was executed in New Jersey. *Id.* at *17. In addition, there was nothing compelling about the telephone calls for technical support because the "calls were directed at Maryland only because AutoScribe, the sole company able to respond to these problems, happened to be located in Virginia." *Id.* at *18. Because the court did not find purposeful availment, it held that there was a lack of personal jurisdiction over the defendants.

LTS's contacts with Virginia are far less than the defendants' contacts in *AutoScribe*. In this case, there is no evidence that the license agreement was executed in Virginia, or that LTS reached out to Peoples or ITS for technical support or other support with the training materials. Further, Mrs. Lopez's email was directed at Virginia only because ITS employee, the company it was attempting to purchase training materials from, was located in Virginia. Simply put, LTS did not purposefully avail itself of the protection of Virginia law by transacting business in Virginia.

ITS contends that LTS consented to personal jurisdiction in Virginia based on the forum selection clauses of the license agreements; or that alternatively, the license agreements are a substantial contact with Virginia. The Court disagrees. Merely entering into a license agreement does not subject a non-resident defendant to personal jurisdiction in the forum state. *Superfos Invs. Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 398 (ED. Va. 1991) (stating that "due process requires that

there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction. A contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts." (citations and quotation marks omitted.)). The Court must look to factors such as: (1) who initiated the agreement; (2) where the negotiations occurred; (3) the extent of communication; (4) where the agreement was executed; and (5) where the agreement was to be performed. *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 U.S. App. LEXIS 11932, *7 (4th Cir. May 30, 2000) (citing *Affinity Memory & Micro, Inc. v. K & Q Enters.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998)).

    Here, there is no assertion in the record that LTS initiated or solicited the agreements or that the license agreements were executed or negotiated in Virginia. Rather, the inference which can be drawn from Defendants' uncontroverted declaration that only on one occasion in 2003 did an agent travel to Virginia is that the 2007 and 2008 license agreements were not executed in Virginia. The agreements are one-page forms, which appear to be preprinted, and may have been entered into without negotiations. Further, the license agreements permitted LTS to use the training materials at one location—California. There is no assertion that during the term of the license agreements or thereafter, LTS directed its training activities to Virginia residents. Moreover, although the agreements contain forum selection clauses which survive the termination of the agreements, the alleged infringement does not arise out of, or relate to, the license agreements. As counsel for LTS argued at the hearing, ITS unduly relies on the license agreements because if the causes of action arise out of, or relate to, the license agreements, ITS should have had no trouble bringing a breach of license action. As it stands, LTS is like any other possible infringer of ITS's works and the contacts relating to the license agreements simply do not constitute purposeful acts by LTS tethered to the copyright infringement claims, sufficient to establish personal jurisdiction over LTS. *See*

15

*AutoScribe Corp.*, 1995 U.S. App. LEXIS 2848, at *19 (finding lack of purposeful availment under substantially similar facts).

Furthermore, the Court also cannot assert specific personal jurisdiction over LTS on the basis of the purposeful direction theory because ITS fails to satisfy the second and third prongs of the effects test. The first prong requires a showing that defendant committed an intentional tort, and to the extent ITS's claims are based on copyright infringement, this prong is presumably satisfied by ITS's assertion that LTS committed the tort of copyright infringement. The second prong requires a showing that the plaintiff felt the brunt of the harm in the forum state. Just as in patent cases, the harm suffered in copyright cases is felt where the tortfeasor sells the infringing copyrighted work. *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 684 (M.D.N.C. 2011). Here, there is no evidence in the record that LTS distributed or sold the copyrighted materials in Virginia or to any Virginia residents. The inference is thus that the harm from LTS's alleged tort was felt outside of Virginia. Accordingly, the second prong is not satisfied. Under the third prong, the plaintiff must show that the defendant expressly aimed tortious conduct at the forum state. Here, the record is devoid of evidence that LTS or its representatives ever sold displayed, discussed, or marketed the allegedly infringing materials in Virginia, or to Virginia residents. There is simply no evidence that LTS expressly aimed its tortious conduct at Virginia. As such, the third prong of the effects test is also not met.

Because ITS fails to meet its burden of establishing that LTS purposefully availed itself of the privileges of conducting activities in Virginia, or purposefully directed its allegedly tortious activities toward Virginia, the Court finds that the first prong of the three-part specific jurisdiction

test is not met. The Court need not reach the second and third prongs.[14] For all these reasons, the Court lacks specific personal jurisdiction over LTS.

    b.  _Latino Tax Professionals Association (LTPA)_

Distilled to its essence, ITS asserts that LTPA has the following contacts with Virginia: (1) five "training sites" located in Virginia[15] through which LTPA offers products and services, including infringing training materials, and which LTPA markets on its website and on promotional materials; (2) an email from LTPA sent to a Virginia email address explaining the training sites initiative and soliciting other sites; and (3) solicitation of business from MRS Tax of Woodbridge, Virginia, a long-time customer of ITS.[16]

---

[14] Moreover, looking at tort provisions of Virginia's long-arm statute, it is plain to see why personal jurisdiction over LTS is not proper. Under Section 8.0-328.1(A)(3) of the Code of Virginia which authorizes jurisdiction over a non-resident defendant that commits a tort by an act or omission in Virginia, jurisdiction "'must be tied to some act by the defendant within the Commonwealth.'" _Booth v. Leaf_, No. 94-1084, 1994 U.S. App. LEXIS 30738, at *4 (4th Cir. Nov. 3, 1994) (quoting _Early v. Travel Leisure Concepts, Inc._, 669 F. Supp. 130, 132 (E.D. Va. 1987). ITS failed to show that LTS caused a tortious injury by an act or omission of LTS while in Virginia. Therefore, this section does not authorize the exercise of personal jurisdiction over LTS.

    Similarly, Section 8.0-328.1(A)(4) of the Code of Virginia does not authorize personal jurisdiction over LTS. Under Section 8.0-328.1(A)(4), a Virginia court may exercise personal jurisdiction over a non-resident defendant that (1) commits a tort outside Virginia; _and_ (2) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Virginia]." Although ITS sufficiently alleges that LTS committed the intentional tort of copyright infringement by an act outside of Virginia, ITS fails to show that they "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Virginia]." _Id._ As stated above, LTS does not regularly do or solicit business in Virginia, neither does it maintain ongoing interactions with Virginia to demonstrate a "persistent course of conduct." _See Booth_, 1994 U.S. App. LEXIS 30738, at *5 (To constitute "a 'persistent course of conduct,' . . . 'at a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state.'" (quoting _Willis v. Semmes, Bowen & Semmes_, 441 F. Supp. 1235, 1242 (E.D. Va. 1977))). Additionally, it is uncontroverted that LTS has not derived any revenue from anyone in Virginia. As such, Section 8.0-328.1(A)(4) is not implicated and does not authorize jurisdiction over LTS.

[15] These five training sites are: (1) M&E Tax and Financial, Alexandria, Virginia; (2) CDL, Inc., Harrisonburg, Virginia; (3) Sea Tax Services, Alexandria, Virginia; (4) Latin Tax, Inc., Alexandria, Virginia; and (5) Markios Acct. Tax Service, Woodbridge, Virginia. (_See_ McCabe Decl. Ex. C at 1-2.)

[16] _See supra_ note 12.

With regards to the training sites, ITS elaborates that the relationship between LTPA and the five training sites is a licensing and distribution partnership through which LTPA distributes infringing materials in Virginia. On LTPA's website, it lists the training sites as "partners," promotes the services of the training sites, and provides the contact information for the training sites. (*See* McCabe Decl. Exs. C & D.) LTPA disagrees with ITS's characterization of the training sites. According to LTPA, the training sites are entities to which LTPA sold training materials to at a 2010 tradeshow in Orlando, Florida. (Carlos Reply Decl. ¶ 7.) LTPA claims that it does not: (1) own or operate the training sites located in Virginia; (2) have any partnership with the owners or operators of those centers; (3) derive revenue from the operations of those training sites; and (4) assist or support the training at those centers; and (5) sell its materials through the Virginia training centers.

Although the five training sites appear to be, or are, independent businesses, personal jurisdiction can nonetheless be asserted over LTPA on the basis of its relationship with the training sites. LTPA sells allegedly infringing materials to the training sites, and then markets the training sites information on LTPA's website. The listing of the training sites on its website exposes LTPA to personal jurisdiction. Particularly, LTPA's website encourages website visitors to find and attend a training site closer to them.[17] By advertising the Virginia training sites, LTPA intentionally targets Virginia residents because it is most likely individuals who reside in Virginia that would enroll in the Virginia training sites.[18] On the basis of this contact alone, the Court finds that it can exercise specific personal jurisdiction over LTPA.

---

[17] LTPA's website specifically states: "If you are looking for live training, click on the links below to find a training center near you. [LTPA] is responsible for keeping records, handing out a certificate of completion and providing the PTIN-level information to the IRS for students who take our program." (McCabe Decl. Ex. C.) Thereafter, it provides links to several states, including Virginia.

[18] LTPA contends that it has not "derived any revenue from any of the Virginia entities' use of the materials to train others." (Carlos Reply Decl.¶ 8.) Nonetheless, the Court determines LTPA derives revenue from the actual sale of the materials to the training sites.

Moreover, LTPA's website also provides a basis for this Court to exercise personal jurisdiction over LTPA. Courts considering specific personal jurisdiction based on a defendant's internet activities, divide defendants along a "sliding scale" to determine whether the quality and nature of the internet activities warrant the forum state's exercise of personal jurisdiction. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). In the first category, one which courts have usually not exercised specific jurisdiction is where the defendant's only contact with the forum state was a "passive" maintenance of a website accessed by the forum state's residents, and did not involve the exchange of information with those residents. *See Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006) (finding that a passive website which merely described the defendant's products but did not accept orders, and did not include information about the forum state fails to confer jurisdiction). The second category, the "middle ground," involves the exchange of information over the internet between the defendant and residents of the forum state. *See Electronic Broking Servs., Ltd. v. E-Business Solutions & Servs.*, 285 F. Supp. 2d 686, 691 (D. Md. 2003) (holding that defendant's semi-interactive website which displayed a contact email address through which the defendant could be contacted, in the absence of any indication that the defendant intentionally targeted the forum's residents, was insufficient for the court to exercise jurisdiction). In the last category, the defendant's website is highly interactive whereby the defendant actively conducts business on the internet by selling products or entering contracts. Courts have usually had no hesitation in exercising personal jurisdiction over this third category. *See, e.g., Young Again Products, Inc. v. Acord*, 307 F. Supp. 2d 713, 717 (D. Md. 2004) (finding that personal jurisdiction was proper where the defendant's internet activity involved the publication of the infringing trademarked and copyrighted products which were the subject of the parties' agreement which was entered into in Maryland).

Here, LTPA's website falls in the third category of the sliding scale because of it sells the allegedly infringing products on its website. LTPA contends that although potential buyers can purchase LTPA's training materials from the website, they cannot do so from website pages listing the training sites, and as such, LTPA does not offer training materials for sale through the Virginia training sites. Additionally, LTPA argues that the servers for the website are located in California, and thus do not subject LTPA to personal jurisdiction. It is the nature of LTPA's internet activities that determine whether the Court may exercise personal jurisdiction over LTPA, and not whether the products are specifically offered through the Virginia training sites or whether LTPA's servers are located in California. LTPA's internet activities—selling allegedly infringing training materials— is directly related to the copyright infringement claims asserted against LTPA in this action. Moreover, as stated above, by advertising the Virginia training sites on its website, LTPA targeted Virginia residents who could potentially purchase the infringing materials from the website. For these reasons, the Court finds that LTPA's website is a sufficient and substantial contact to confer jurisdiction on the Court. Therefore, the Court finds that it has personal jurisdiction over LTPA.[19] The Court need not engage in further analysis on the other contacts and the purposeful direction theory of specific jurisdiction.

     c.   *The Lopez Defendants*

ITS alleges that Mrs. Lopez has the following contacts with Virginia: (1) in 2007 and 2008, Mrs. Lopez, on behalf of LTS, signed license agreements with Peoples; and (2) in 2010, Mrs. Lopez sent an email via her LTS email account to an employee of ITS located in Virginia, inquiring about

---

[19] ITS avers that LTS transferred the infringing materials to LTPA. The record fails to show that LTS's transfer of materials to LTPA occurred in Virginia, and as discussed *supra* pp. 15-16, under the effects test, LTS is not subject to personal jurisdiction because its acts are not shown to be expressly aimed at Virginia. Additionally, absent evidence in the record that would lead a court to pierce the corporate veil or treat LTS and LTPA as a single entity, the Court maintains that it lacks personal jurisdiction over LTS. *See Mylan Labs*, 3 F.3d at 61-62 (stating factors that permit a court to pierce the corporate veil).

ITS's courses, pricing, and the possible resale of training materials, (McCabe Decl. Ex. H).

Regarding Mr. Lopez, ITS asserts that he has following contacts with Virginia: (1) from 2000 to

2008, Mr. Lopez purchased training materials from Peoples with orders and payments submitted to

Virginia; and (2) in 2003, Mr. Lopez traveled to Virginia to attend a Peoples' retreat and while on

that retreat, Mr. Lopez purchased additional training materials from Peoples. (Pl.'s Opp'n 4.)[20] These

contacts are insufficient for the Court to assert specific jurisdiction over the Lopez Defendants.

Generally, "[a] corporate agent is not subject to personal jurisdiction in his individual

capacity solely based upon his status as a corporate officer or agent." *D'Addario v. Geller*, 264

F.Supp.2d 367, 380-81 (E.D. Va. 2003). "The relevant inquiry is the action taken by the officer or

employee. Whereas general actions by such persons on behalf of the corporation will not generally

subject them to an out-of-state court's jurisdiction, actions related to the events in question may do

so." *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 799 (M.D.N.C. 2009) (internal

quotation marks and alterations omitted). Under Virginia law, a court may pierce the corporate veil

to find that an individual is the alter ego of a corporation where it finds '(i) a unity of interest and

ownership between [the individual and the corporation], and (ii) that [the individual] used the

corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or

to gain an unfair advantage.'" *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434

(4th Cir. 2011) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002)).

ITS fails to demonstrate that either LTS or LTPA are alter egos of the Lopez Defendants.

Hence, none of LTS's or LTPA's contacts are attributable to the Lopez Defendants. Moreover,

although ITS contends that this Court has personal jurisdiction over the Lopez Defendants for

---

[20] Mr. Lopez avers that he did not purchase anything from Peoples, or ITS, rather all alleged
purchases were made by LTS. Additionally, he states that on his trip to Virginia in 2003, he
purchased a handbook on Mr. McCabe's experience, as opposed to training materials, and as such,
Mr. Lopez's trip is unrelated to the cause of action.

copyright infringement, there is no evidence that Mrs. Lopez has ever been to Virginia, and there is no allegation that Mr. Lopez committed a tort during his only trip to Virginia in 2003. There is no evidence that the agreements were executed in Virginia; there is no evidence that the Lopez Defendants have other business in Virginia. As such, ITS's infringement claims do not arise out of, and is not related to, the activities of the Lopez Defendants in Virginia. As the Lopez Defendants lack any other contacts with Virginia, other than those made in their official capacity as employees or officers of LTS and LTPA, the Court cannot exercise personal jurisdiction over the Lopez Defendants based on the purposeful availment theory of specific jurisdiction.

With regards to the purposeful direction in tort cases, a non-resident corporate agent may be subject to the specific jurisdiction if he participates in the commission of the tort by activities which occurred outside the forum state. *Tillman v. Wheaton-Haven Recreation Ass'n., Inc.*, 517 F.2d 1141, 1144 (4th Cir. 1975). In this context, it is irrelevant that the agent acted for the benefit of the corporation. *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1059 (4th Cir. 1983). Merely causing a tortious injury in the forum state, however, is insufficient for a court to assert personal jurisdiction. Rather, the non-resident defendant must "know[ ] that that conduct would cause harm to a forum resident." *Carefirst of Md., Inc.*, 334 F.3d at 398.

Here, ITS conclusorily alleges that the Lopez Defendants "participated actively and knowingly in the infringing activities" asserted in the Complaint, (Compl. ¶¶ 2 & 3), presumably satisfying the requirement that the Lopez Defendants personally participated in the commission of the alleged tort. Nonetheless, ITS fails to specify the individual copyright infringement activities taken by the Lopez Defendants. (*See* Compl. ¶¶ 2-3, 16-17, 19.) Even if these bare conclusory allegations of personal involvement were sufficient, the effects test for purposeful direction is not satisfied because there is no evidence that the Lopez Defendants expressly aimed their actions to Virginia with knowledge that harm in Virginia was likely. ITS fails to even allege that the Lopez

22

Defendants took infringing materials into Virginia and there is no evidence that the Lopez Defendants solicited any Virginia resident on behalf of LTS or LTPA while in Virginia. The record simply does not support the conclusion that the Lopez Defendants could have reasonably anticipated being haled into Virginia courts. Accordingly, the Court may not exercise of personal jurisdiction over the Lopez Defendants.

For all these reasons, the Court finds ITS has failed to meet its *prima facie* burden of establishing the existence of personal jurisdiction over LTS and the Lopez Defendants, but has satisfied its burden as to LTPA. Accordingly, the Court GRANTS IN PART the Motion with regard to LTS and the Lopez Defendants, and DENIES IN PART the Motion as it relates to LTPA.

## III.   INSUFFICIENT SERVICE OF PROCESS

Defendants also seek dismissal under Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficiency of service of process. Defendants were served through the Secretary of the Commonwealth of Virginia, in attempt to comply with Section 8.01-329 of the Code of Virginia.[21] Summarily, Defendants argue that to be served through the Secretary of the Commonwealth under Section 8.01-329, personal jurisdiction must exist. Defendants state they are non-residents, not subject to personal jurisdiction, and hence, were not properly served. ITS contends that personal

---

[21] In relevant part, Section 8.01-329 provides:

> When the exercise of personal jurisdiction is authorized by this chapter, service of process or notice may be made in the same manner as is provided for in Chapter 8 (§ 8.01-285 et seq.) of this title in any other case in which personal jurisdiction is exercised over such a party, or process or notice may be served on any agent of such person in the county or city in this Commonwealth in which that agent resides or on the Secretary of the Commonwealth of Virginia, hereinafter referred to in this section as the "Secretary," who, for this purpose, shall be deemed to be the statutory agent of such person.
>
> When service is to be made on the Secretary, the party or his agent or attorney seeking service shall file an affidavit with the court, stating . . . that the person to be served is a nonresident . . . . [S]uch affidavit shall set forth the last known address of the person to be served. . . .

Va. Code Ann. § 8.01-329.

23

jurisdiction exists, and thus, service of process was satisfactory. Because the Court lacks personal jurisdiction over LTS and the Lopez Defendants, the Court finds that service of process on them was insufficient. However, the Court has personal jurisdiction over LTPA, the Court finds that service of process on LTPA through the Secretary of the Commonwealth was sufficient.

## IV.   TRANSFER IN THE INTEREST OF JUDICIAL EFFICIENCY AND ECONOMY

## A.   Legal Standard

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Where concurrent federal proceedings exist, the first-to-file rule generally dictates which federal court decides the action. Under the first-to-file rule, when suits involving substantially the same parties and issues are filed in different federal courts, the federal court in which the first action is filed should decide it. *Allied-General Nuclear Servs v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982). The purpose of this rule "is the avoidance of duplicative litigation and the conservation of judicial resources and to ensure judicial efficiency, consistency, and comity." *Ortiz v. Panera Bread Co.*, No. 1:10-CV-1424, 2011 U.S. Dist. LEXIS 85463 at *3-4 (E.D. Va. Aug. 2, 2011) (Hilton, J.).

While the invocation of the first-to-file rule is the norm, when a court is presented with special or exceptional circumstances, or upon "the showing of balance of convenience in favor of the second action," the court where the first action is filed may in its discretion depart from the first-to-file rule. *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974); *see Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (holding that "exceptions [to the first-to-file] are not rare, and are made when justice or expediency requires."); *see also Commercial Union Ins. Companies v. Torbaty*, 955 F. Supp. 1162, 1163 (E.D. Mo. 1997) (stating that the first-filed rule "is not applied in a 'rigid, mechanical, or inflexible' manner, but is applied to best serve the

interests of justice." (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982)).

The "Fourth Circuit has not stated explicitly that special [or exceptional] circumstances may warrant an exception to the first-filed rule." *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 301 n.2 (4th Cir. 2001). The factors relevant to determine whether the second court should decide the case are "essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Emp'rs Ins. of Wasau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks omitted). These factors include: the plaintiff's forum choice, the convenience of the parties and witnesses, and the interest of justice. 28 U.S.C. § 1404(a); *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).

"[T]he court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies." *Ontel Prod. Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995).

## B. Discussion

Here, the action in this Court is the first-filed action because it was filed on May 2, 2012, whereas the action in the Northern District of California was filed on May 23, 2012. The action in the Northern District of California and the action in this Court are essentially concerned with the question of whether several specified copyright works were infringed. The two actions concern the same parties and the same facts. In fact, ITS conceded that the action in the Northern District of California, (with the exception of the defamation count), is the mirror image of the action in this Court. Ordinarily, under these facts, the Court would have no difficulty deciding this action.

However, exceptional circumstances exist which permit this Court to abstain from deciding this case. The action pending in both courts are identical. The Court has already determined that it lacks personal jurisdiction over the Lopez Defendants and LTS, but has personal jurisdiction only

over LTPA. The Lopez Defendants, who are citizens of, and reside in California, own and operate

LTS and LTPA, which are incorporated and have their principal place of business in California.

Moreover, ITS routinely does business in California, and has not challenged the Northern District of

California's exercise of personal jurisdiction. Further, many of the allegedly infringing activities

asserted in this action occurred in California, such that the relevant witnesses and documents are

located in California. Because the actions pending in both courts are substantially similar, and the

evidence likely to be presented in both courts would be substantially identical, there is a need to

avoid piecemeal litigation. The Court finds that there is a need to avoid piecemeal litigation over this

copyright infringement action which involves a consortium of somewhat interrelated activities

conducted by the Defendants. As such, the Court finds that in the interest of judicial economy and

efficiency, the Northern District of California should decide this action as it relates to LTPA.

Accordingly, the Court declines to entertain the action against LTPA, and transfers it to the

Northern District of California.

## V.     CONCLUSION

For the reasons stated above, the Court finds that it lacks personal jurisdiction over the

Lopez Defendants and LTS, and consequently, service of process on them was insufficient. In

addition, the Court finds that it has personal jurisdiction over LTPA, and as a result, service of

process on LTPA was sufficient. Therefore, the Court GRANTS IN PART and DENIES IN PART

the Motion. The Court finds that in the interest of wise judicial administration, however, it is

expedient for the Court to decline to hear the action against LTPA as the only remaining Defendant.

Accordingly, the Court abstains from hearing this action against LTPA and TRANSFERS this

action to the Northern District of California.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will accompany.

26

/s/
James R. Spencer
United States District Judge

ENTERED this 7ᵗʰ day of August 2012.